Grollman's Estate (No. 1).

*Executors and administrators—Improper valuation of interest—Sale—Accounting—Decedents' estates—Auditor's findings of facts—Orphans' court—Jurisdiction—Claim against estate—Evidence.*

1. An auditor's findings of fact based on sufficient supporting evidence approved by the orphans' court, will not be reversed, except for clear error.

2. Where an executor has failed to exercise common care, prudence and caution in the handling of the estate, he must make whole the fund which, through his fault, has been depleted.

3. The orphans' court has no jurisdiction over the settlement of partnership accounts, but where an executor has made an unfair valuation of the testator's interest in a partnership, sells such in-

terest, and accounts for the proceeds, and brings the fund before an auditor, the orphans' court may assume jurisdiction to pass upon the fairness of his conduct, and surcharge him if it is proper so to do.

4. Where an executor asserts a claim for services rendered to a partnership in which testator had a half interest, and such claim is supported by the testimony of the surviving partner, and the evidence in the case justifies a conclusion that the executor and the surviving partner were attempting to reduce the estate of the deceased for their own personal advantage, the auditor and the orphans' court are justified in not believing their testimony.

Argued March 6, 1922. Appeal, No. 262, Jan. T., 1922, by I. J. Grollman, individually and as executor, from decree of O. C. Northampton Co., dismissing exceptions to auditor's report in Estate of Benjamin S. Grollman, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to report of John D. Hoffman, Esq., auditor. Before STEWART, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. I. J. Grollman, individually and as executor, appealed.

*Errors assigned* sufficiently appear by the opinion of the Supreme Court.

*Calvin F. Smith,* of *Smith, Paff & Laub,* with him *A. F. Kahn,* for appellant.—The orphans' court has no jurisdiction: Unruh's Est., 13 Phila. 337; Ainey's App., 2 Penny. 192; Weigley v. Coffman, 144 Pa. 489; Wiley's App., 84 Pa. 270; Cunningham's Est., 75 Pa. Superior Ct. 190; Mamaux's Est., 260 Pa. 514; Hermann's Est., 226 Pa. 543.

*Edward J. Fox,* with him *James W. Fox,* for appellee, cited: Lowry's App., 114 Pa. 219; Barclay v. Barclay,

230 Pa. 467; Naugle's Est., 268 Pa. 481; Boyd v. Houghton, 269 Pa. 273.

OPINION BY MR. JUSTICE SADLER, April 17, 1922:

Benjamin Grollman, member of a partnership conducting a department store in the City of Easton, died in 1919, having left a will in which his brother, Isaac, was named executor, as well as guardian of his children. His associate in the firm was another brother, Louis, and together they had carried on the enterprise for many years, Isaac acting as a clerk, receiving a fixed salary, and, as he claimed, being promised in addition a sum based upon the amount of business transacted. The decedent had been ill for many months, and, in January preceding his death, entered into an agreement with his copartner, by which a method of fixing their respective interests, in case of dissolution, was settled upon. It was provided that the survivor should carry on the affairs, paying, in a designated way, the share of the one withdrawing, the amount thereof to be determined by having a "fair and true account" of the assets, based upon their "net worth." In April following, a second contract was signed by which the share of Benjamin was fixed at the arbitrary value of $10,000, and provision was made for a new partnership, in which Louis and Isaac should be joined. It may be here observed that no effort was made to enforce the terms of this understanding, the survivors stating it to be so manifestly unfair that all claims thereunder were abandoned.

Isaac was granted letters upon the estate of his brother, and liquidated the assets. He made sale of the interest of Benjamin in the partnership, for a sum based on an inventory in which the values were estimated on cost price of the articles in the store, and accounts receivable, less 20% discount on the latter for bad debts. Having determined upon a valuation, which he claimed represented the "net worth," he sold the interest to his brother, Louis, for this sum, and later entered into a

partnership with him, conducting the old business in the name of Grollman Brothers. His account, as executor of Benjamin, was filed in the orphans' court, and in it he charged himself with the purchase price of the decedent's share in the firm, which he had transferred to Louis, as well as with other items. Exceptions were filed by the widow, it being insisted the accountant had disposed of the partnership interest for an inadequate sum, by reason of which he should be surcharged.

On motion of the accountant, an auditor was appointed to pass upon the complaints made. Testimony was heard by him in support of the respective positions, and a finding was made that the net worth of the business sold was $8,000 in excess of the sum fixed by the executor, and he should be compelled to account for one-half of this sum in addition to the other amounts with which he was charged. The conclusion reached was approved by the orphans' court, and it is the correctness of its decree which is now challenged.

In passing on the questions involved, which are largely dependent upon findings of fact, it is to be kept in mind that only those which are plainly mistaken, having no sufficient supporting evidence, will be considered on appeal: McConville v. Ingham, 268 Pa. 507. Nothing but clear error will justify us in setting them aside: Cruzan v. Cruzan, 243 Pa. 165; Hermann's Est., 226 Pa. 543.

The record discloses ample justification for the determination made. Evidence was received to show the true worth of the property sold. On its face, the transaction was suspicious. Two agreements were obtained from the decedent, while he was the victim of a serious illness, by which methods of valuation were provided, evidently secured for the purpose of benefiting those who survived. Indeed, so unjust was the second arrangement, of April, that the parties abandoned any attempt to make use of its terms. Further, the executor, supposedly having the interest of his decedent in mind, as well as the children for whom he was testamentary guardian, made

sale of the one-half to his brother, Louis, and subsequently took over for himself a share of the new firm which had been formed. Under such circumstances, the testimony was naturally examined most carefully to determine the good faith of the fiduciary. If there was a failure to exercise common care, prudence and caution in the handling of the estate,—and the auditor and court below so found,—then he was properly directed to make whole the fund which, through his fault, had been depleted: Skeer's Est., 236 Pa. 404; Seidman's Est., 261 Pa. 540.

It is, however, insisted the surcharge cannot be sustained, under the facts here disclosed, by reason of lack of jurisdiction to pass upon the contention, in that the question required in effect a settlement of partnership accounts, a matter for the common pleas and not the orphans' court. As an abstract proposition, this is a correct statement of the law, and when one partner makes a claim against a decedent's estate for a sum which he claims will be due to him upon an adjustment of the firm affairs, the court will not consider the independent transaction, and investigate accounts to determine the respective rights of the claimant and his copartner (Miller's Est., 136 Pa. 349; Weigley v. Coffman, 144 Pa. 489), though it will dispose of a claim of a firm creditor presented for adjudication. Barclay v. Barclay, 230 Pa. 467.

A very different proposition is presented here. No claim is being made for a sum due Benjamin, the determination of the amount requiring the settlement of partnership affairs. In the case at bar, the executor has made sale of the interest of the decedent, voluntarily accounted for this sum, and brought the fund before the auditor for distribution. The fairness of his conduct in making the transfer at the price fixed is the subject of attack. As was said in Hermann's Est., 226 Pa. 543, 546: "The jurisdiction of the orphans' court to determine the question here raised is challenged. It is to be

noted that the partnership was first asserted by the accountant, and that he voluntarily made it the subject of accounting. That the orphans' court has jurisdiction in such a case abundantly appears in Brown's Appeal, 89 Pa. 139." See also, Moore's Est. (No. 1), 228 Pa. 516, and (No. 2), p. 523. It is further to be noticed no complaint was entered against the power to act until an adverse decision was rendered, whereupon, by exceptions, the question of jurisdiction was raised by the accountant, as well as by the other partner, Louis. The overruling of the contention was entirely proper, and the assignments of error 2, 4, 6 and 8, based on the proposition advanced, cannot be sustained.

One other matter requires consideration. The executor made a claim before the auditor for services rendered the partnership for which, if correct, the estate of decedent was chargeable with one-half. He insists there was due to him a sum for salary and bonus, based on one per cent of the yearly cash receipts, covering a period of more than seven years. The claim was supported by the surviving partner, and by certain book entries, evidently not made on the date set forth. Under the facts appearing, the auditor declined to give credence to this testimony, and we cannot say that he was not justified in so determining. Claims against a decedent's estate, which might have been presented while living,—here the charge was against the partnership, and had for its purpose the charging of one-half the amount against the assets of the deceased brother,—are always the subject of just suspicion, and require clear proof before they will be allowed: Gilbraith's Est., 270 Pa. 288. It is true both Isaac and Louis swore to the account, but the auditor was not bound to believe them. "It does not follow, however, because they were competent witnesses the court below was obliged to accept their statements as verity. The opportunity for collusion is always great where two or more people take turn about in testifying for each other, and hence we are not prepared to say the court be-

low clearly erred in refusing to find as facts those conclusions which depended on their testimony alone": Gongaware's Est., 265 Pa. 512. We are not surprised that the auditor and court below came to the conclusion that there was an attempt in this case by Isaac and Louis to reduce the estate of their deceased brother for their own personal advantage, and, as a result, rejected the claim, having this purpose in view. The third, fifth and seventh assignments, complaining of its disallowance, are overruled, as are one and eight, directed to the surcharge and final decree.

Holding, as we do, that the orphans' court had jurisdiction under the circumstances here appearing, and as there was sufficient competent evidence to sustain the findings of fact made by the auditor, and approved by the court, which justifies the conclusions of law reached, the decree must be sustained.

The decree is affirmed at the cost of the appellant.