## STONE, Sr. *v.* STONE, Jr.

[No. 54, September Term, 1962.]

*Decided December 12, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*James G. Woodward,* for appellant.

*William J. McWilliams,* for appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from the decree of the chancellor, Judge Michaelson, of the Circuit Court for Anne Arundel County, in favor of appellee, plaintiff below, ordering the distribution of one-half of the remainder of the corpus and income of a trust of which appellant was settlor and successor-trustee, and appellee was one of two beneficiaries. Appellant is the father of the appellee.

The trust in question was set up by an indenture dated May 16, 1932. As provided in it, appellant was the settlor, his wife, Frances Wendell Stone, was trustee, and their two children, Frances Wendell Stone (now Warrick) and appellee, were beneficiaries. The indenture actually established two trusts, one for the benefit of each child. An undivided one-half interest in the property donated by appellant in trust constituted the corpus of each trust.

Mrs. Stone administered the trust estate until her death in November, 1948, when she was succeeded by her husband, the appellant, according to the terms of the indenture.

Since the indenture called for distribution of the corpus to each beneficiary when he or she reached age thirty, with periodic distributions of income to each, in 1952 when appellee became thirty, he demanded distribution. Appellant did distribute to appellee and his sister all of the bonds held in trust, but none of the stocks. The stocks were not distributed because of a dispute as to whether certain shares actually belonged to the trust or were appellant's individual property. In 1958, the question still not being resolved, appellant delivered to a bank in

New York all those shares of stock he considered to be part of the trust, the bank to distribute equally the shares to the two beneficiaries. He did not distribute some of the income of the two trusts since he anticipated litigation because of the dispute as to the distribution of the stocks.

In August, 1958, appellee filed a bill of complaint in a Maine court against the appellant and the other beneficiary, praying for the same relief he seeks here. Appellant did not answer or defend in the Maine case, because, he says, that he was neither a resident of or domiciled in that state, having left Maine earlier under the advice of his doctor because of the condition of his health. The Maine court entered a decree *pro confesso* in January, 1959, and, in March 1959, entered an interlocutory decree for accounting.

Appellee filed a bill of complaint in this case in the Circuit Court for Anne Arundel County on May 21, 1959, asking that the appellant be required to distribute one-half of 600 shares of General Motors Corporation stock and one-half of 400 shares of Continental Oil Company stock, which appellant claimed were not part of the trust estate, but his own individual property. (Originally there were only 100 shares of each stock, but stock dividends and splits had increased them to their present number.) He also claimed one-half of the income still held by appellant, plus interest thereon. In addition he contended that there was a special account standing in the name of appellant's deceased wife which belonged to the trust, and that he was entitled to one-half of this sum, plus interest thereon.

On December 28, 1961, Judge Michaelson, after having heard lengthy testimony and considered many exhibits, passed a decree ordering appellant to distribute 300 shares of the General Motors Corporation stock and 200 shares of the Continental Oil Company stock to appellee. He also ordered the accrued income and the special account to be distributed one-half to appellee, with interest at the rate of four and one-half per cent. He denied appellant's claims, set forth in his answer to the bill, for commissions, counsel fees and other expenses. From this decree appellant has appealed.

Appellant contends that the decree of the chancellor is null

and void for the reason that it adjudicated the rights of a person (Mrs. Warrick) who was not a party to the case.

In the first and sixth paragraphs of the bill of complaint, appellee's sister is referred to as "a defendant herein." In the decree Judge Michaelson stated that "plaintiff (and his sister) is co-owner" of the corpus of the trust in question. Paragraph 9 of the bill explains that the first eight paragraphs are the same as that set out in the bill of complaint in the Maine case, in which appellee's sister was an actual defendant. Although she was designated as a defendant in one or more places in the bill of complaint, she was not summoned nor did she participate in any manner in the trial. Since she thus was not a party to this suit, the decree could not operate as an adjudication of rights as between the sister and the defendant. We, therefore, think that the decree should be modified so as to state that the plaintiff is the owner of a one-half interest in the corpus of the trust estate, without referring to the sister or her rights, whatever they may be.

Appellant next claims that certain exhibits were erroneously admitted into evidence. These exhibits, for the sake of brevity, may be summarized in three groups. The first of these groups consists of statements and documents made by appellant in his capacity as co-administrator in Maine of his wife's estate. As to these, all of them were made subsequent to the death of Mrs. Stone and during his incumbency as successor-trustee under the provisions of the trust indenture. At that time he was occupying a threefold position—co-administrator, trustee, distributee of his wife's estate. Although the exhibits involved were primarily concerned with the administration of his wife's estate, it was reasonable for the chancellor to conclude that he was also acting within the scope of his position as successor-trustee, with knowledge of the effects of administration upon his personal rights and upon the trust.

Two of these exhibits were letters written by appellant to Mr. Henry M. Fuller, a member of the Bar of the State of Maine, who handled the administration of his wife's estate in Maine. In them appellant admitted that the General Motors and Continental Oil stocks were part of the trust estate and not part of his deceased wife's estate. He also stated in both

of them that there was a special account in a New York bank designated "F.W.S. Special Account" which was part of the trust estate. The chancellor relied heavily on these letters in his opinion below.

Under the unique situation which prevailed we find that appellant was estopped from successfully contending that when he made and executed these statements and documents he was acting only as a co-administrator of his wife's estate and not as trustee of the trust which he had established. "The test [of estoppel by admissions] is not as to whether the admission is true, but as to whether it would be contrary to public policy and good morals to allow it to be disputed." Jones, *Evidence,* § 374. "Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action." 19 Am. Jur., *Estoppel,* § 50. Under these circumstances appellant is estopped from denying that when he made or executed these instruments he did not have knowledge of the consequences to the trust nor of the injury to the beneficiaries if he later denied them or that he was acting in the capacity of trustee.

The second group of exhibits consists of records and documents pertaining to the Maine administration of his wife's estate. They include, *inter alia,* lists of or claims as to securities which tended to show negatively or affirmatively that the stocks here involved were part of the trust estate. Appellant contends that they are entirely independent of the trust and are too remote to be material to the issue in this case and were therefore not admissible. Some of the documents questioned do make reference to items that are alleged to have been in the trust, namely: the shares of General Motors and Continental Oil. Others are not pertinent to the trust at all and shed no light on the true composition of the trust estate. What we have said with reference to the first group of exhibits applies with equal force to the second group insofar as they mention ownership of the shares of stock. As to those exhibits which do not men-

tion the stocks, they were immaterial to the issue here involved and even if they were inadmissible on that ground their admission into evidence was certainly harmless error and in no way prejudiced the appellant's claim of ownership.

The third group were records of income for certain years— trust income for 1942, 1944-47, personal income of appellant for 1942-43, successor-trustee income for 1949-50 and 1957. Three were in appellant's handwriting and six are conceded by him to be in the handwriting of his wife. They were offered for the purpose of showing that appellant and his wife both considered the General Motors and Continental Oil stocks to be part of the corpus of the trust, not to show the payment of taxes as appellant contends. They were offered to show a state of mind of appellant and his wife, which was that they intended to include the stocks in the corpus of the trust. As such they were admissible. *Stoner v. National Metropolitan Bank,* 84 F. Supp. 726 (D.C.) ; *Foster v. Winingham,* 169 F. 2d 46 (C.C.-A. 10th Cir.).

Appellant contends that even if the exhibits in question were admissible, the evidence still did not support the findings and decree of the chancellor. We have held on numerous occasions that on appeal from a court of equity, we will not disturb the chancellor's findings of fact, based upon evidence taken in open court, unless such findings are clearly unwarranted by the evidence. *Blair, Exec. v. Haas,* 215 Md. 105, 115, 137 A. 2d 145, and cases cited therein.

The appellant also claimed that appellee was bound by appellant's testimony when appellee called him as a witness. This claim is based upon his assertion of the inadmissibility of the documents which contradicted his statements on the stand and that for this reason appellant's testimony should be binding upon appellee. Since we find the documents were properly admitted, his statements do not stand uncontradicted and it was for the chancellor to decide the truth of the statements.

The last three grounds upon which appellant seeks reversal are considered together, since they involve details of the chancellor's decree as to how appellant is to distribute the corpus and the income of the trust, and whether appellant is entitled to certain fees with reference to his administration as trustee.

One of these grounds was that appellant did not receive personally any of the income in the way of dividends in 1948-50 from the General Motors and Continental Oil stocks. The evidence shows that these corporations did pay dividends in those years, but there was no evidence to show that the dividends were paid into the trust estate. Judge Michaelson determined from the evidence that appellant was liable for them, and since he had the opportunity to see and hear the witnesses, we see no reason to disturb his findings. *Blair, Exec. v. Haas, supra.*

The other two grounds involve the chancellor's discretion in solving the problems involved in the case. The chancellor, in his opinion below, emphasized the breach of duty by appellant as trustee toward the beneficiaries. The trustee was held to be answerable to the beneficiaries for any loss suffered through the breach. 2 Scott, *Trusts,* § 205. The court is not confined to a limited list of remedies, but will rather mold the relief to protect the rights of the beneficiary according to the situation involved. *Hanley v. Stulman,* 212 Md. 273, 277, 129 A. 2d 132; Bogert, *Trusts and Trustees,* § 861, p. 3. Where it is reasonable to make him do so, the court may compel the trustee to make specific reparation of the breach of trust. 2 Scott, *Trusts,* § 208 (4). Under these principles, we cannot say that the chancellor erred in directing the distribution and in valuing the stock as he did. As to the claim that the chancellor erred in denying appellant credit for certain fees or expenses, it has been stated that if a trustee has been guilty of a serious breach of trust, it is within the discretion of the court to deny him all compensation or to reduce his commissions below the sum which would otherwise be granted. Bogert, *supra,* p. 15; Restatement, *Trusts,* 2d, § 243, 244 (e).

> *Decree modified and as modified affirmed, with costs.*