383 S.E.2d 502

**The OLD NATIONAL BANK OF MARTINSBURG, as Committee for Evelyn E.M. Hendricks**

v.

**Evelyn E.M. HENDRICKS, an Incompetent, D. Ewell Hendricks, Gilbert L. Hendricks, Sarah Ann Anderson, and Evelyn Elizabeth Reinhart.**

**The OLD NATIONAL BANK OF MARTINSBURG, as Committee for Evelyn E.M. Hendricks, an Incompetent**

v.

**Evelyn E.M. HENDRICKS, an Incompetent, D. Ewell Hendricks, Gilbert Hendricks, Sarah Ann Anderson, Evelyn H. Reinhart, and Richard K. Dowse, Intervenor Below.**

Nos. 17980, 18139.

Supreme Court of Appeals of West Virginia.

July 5, 1989.

---

McHUGH, Justice:

These cases are before the Court upon appeals from the Circuit Court of Jefferson County. In No. 17980, the appellants, Gilbert L. Hendricks and Sarah Ann Anderson, seek reversal of the circuit court's judgment denying reimbursement for expenses and attorney's fees. In No. 18139, the appellants, Evelyn E.M. Hendricks, an incompetent, D. Ewell Hendricks, and Evelyn H. Reinhart, seek reversal of the circuit court's judgment refusing to consider a certain offer to purchase property.

This Court has reviewed the petitions, all matters of record, and briefs of the parties. We are of the opinion that the judgment of the circuit court should be reversed and remanded in No. 17980 and affirmed in No. 18139.

I

In May, 1985, the Berkeley County Commission appointed the Old National Bank of Martinsburg (hereinafter "the Bank") as the committee for Evelyn E.M. Hendricks, an incompetent, upon the petition of her son, D. Ewell Hendricks.

On January 31, 1986, the committee petitioned the Circuit Court of Jefferson County to sell a 158–acre farm owned by Evelyn E.M. Hendricks. The sale was necessary to meet outstanding bills and obligations amounting to $31,000. The petition requested that the committee be permitted to sell the land to D. Ewell Hendricks for $176,400, the amount at which it was appraised. In a proceeding before the circuit court on April 15, 1986, two of the other three children of Evelyn E.M. Hendricks, Gilbert L. Hendricks and Sarah Ann Anderson, objected to this proposed sale, and agreed to loan $35,000, interest free, to satisfy the outstanding debts and obligations of Evelyn E.M. Hendricks. Furthermore, Gilbert L. Hendricks and Sarah Ann Anderson tendered another appraisal of the land in the amount of $255,000.

The circuit court authorized the committee to accept the $35,000 loan in order to avoid an immediate sale. The circuit court

Melody H. Gaidrich, Braun A. Hamstead, Hamstead & Manion, Gaidrich & Feuchtenberger, Charles Town, William A. O'Brien, Martinsburg, for Evelyn E.M. Hendricks.

Lacy I. Rice, Jr., Michael B. Keller, Martinsburg, for Nat. Bank of Martinsburg.

F. Samuel Bryer, Nichols & Skinner, Robert D. Aitcheson, Charles Town, for Richard K. Dowse.

Evelyn Elizabeth Reinhart, Shapsburg, Md., pro se.

also stayed the sale of the property until July 3, 1986, allowing time for higher offers to purchase to be received on the property.

Between April 15 and July 3, 1986, Gilbert L. Hendricks and Sarah Ann Anderson contacted real estate agents and potential purchasers. Despite efforts by D. Ewell Hendricks and the Bank, Gilbert L. Hendricks and Sarah Ann Anderson refused to divulge to their brother, D. Ewell Hendricks, any information on the potential offers.

At the July 3, 1986 hearing, the highest offer was $282,500, offered by Richard K. Dowse. Less a $10,000 realty commission, Dowse's offer would net $272,500 to the estate. The circuit court allowed others to submit offers, even after Dowse's offer was made known. D. Ewell Hendricks submitted an offer of only $200,000, but maintained that it was in the best interest of Evelyn E.M. Hendricks to keep the farm in the family, a desire she often expressed. The circuit court rejected D. Ewell Hendricks' offer, accepting instead, Dowse's offer, which would have netted the most for the estate.

The circuit court's July 3, 1986 order allowed a period until July 17, 1986 for the transaction to be consummated. This order further stated that confirmation would be considered on July 17, 1986. The circuit court's July 3, 1986 order also authorized $35,000 from the proceeds to be repaid to Gilbert L. Hendricks and Sarah Ann Anderson, as reimbursement for their loan.

At the hearing on July 3, 1986, Gilbert L. Hendricks and Sarah Ann Anderson requested that they be awarded attorney's fees pursuant to *W.Va.Code*, 37-1-15 [1959].[1] This motion was denied by the circuit court as not being timely. On July 17, 1986, Dowse paid $282,500 and received a deed from the committee, thus, consummating the transaction.

On December 31, 1986, D. Ewell Hendricks tendered an offer of $290,000. The circuit court rejected that offer and entered an order, belatedly presented, that confirmed the sale to Dowse.

## II

Evelyn E.M. Hendricks, D. Ewell Hendricks, and Evelyn H. Reinhart, the appellants in No. 18139, contend that the circuit court committed reversible error by refusing to accept the December 31, 1986 offer of D. Ewell Hendricks. The appellants maintain that such offer, for $290,000, should have been accepted because it would have netted $17,500 more than Dowse's offer and furthered the desire of Evelyn E.M. Hendricks to keep the farm in the family. Furthermore, the appellants maintain that the sale to Dowse was not confirmed at the time the $290,000 was offered.

Chapter 27, article 11 of the *W.Va.Code* deals with, *inter alia*, the appointment, powers, and duties of committees, including a committee's authority to dispose of the property of an incompetent. Specifically, *W.Va.Code*, 27-11-5 [1974] provides:

> If the personal estate of such person be insufficient for the discharge of his debts, or i[f] such estate or the residue thereof after payment of the debts, and the rents and profits of his real estate, be insufficient for his maintenance and that of his family, if any, the committee of such person may proceed, as provided in article one, chapter thirty-seven of this code, to obtain authority to mortgage, lease or sell so much of the real estate of such person as may be necessary for the purposes aforesaid, or any of them, setting forth in the petition the particulars and the amount of the estate, real and personal, the application which may have been made of any personal estate, and an account of the debts and demands existing against the estate.

Because the outstanding bills and obligations of Evelyn E.M. Hendricks amounted to $31,000, the Bank, as committee, petitioned to sell the 158-acre farm pursuant to *W.Va.Code*, 37-1-11 [1971].

---

1. This statutory provision is discussed in section III of this opinion.

*W.Va.Code*, 37–1–13 [1931], provides, in part:

> If it be clearly shown by the petition, exhibits, and evidence adduced, that the interest of the minor or insane person or convict will be promoted by the sale, lease or encumbrance by mortgage or trust deed, and the court be of opinion that the rights of no person will be affected thereby, it may order such estate, or any part thereof, to be sold, leased, or encumbered by mortgage or trust deed; and in such manner and on such terms and in such parcels as may be deemed most beneficial to the minor or insane person or convict[.]

*W.Va.Code*, 37–1–16 [1931] provides, in part: "Whenever a sale, lease, mortgage or trust deed is ordered as herein provided, the court shall order the proceedings under such sale, lease, mortgage or trust deed, to be reported for confirmation[.]"

The circuit court, in its order following the December 31, 1986 hearing, held that the sale of the farm to Dowse was "de facto confirmed by Mr. Dowse's compliance with the specific conditions of sale as set out in [the court's] Order of July 3, 1986."

■ In syllabus point 2 of *State v. Hatfield*, 136 W.Va. 342, 67 S.E.2d 529 (1951), this Court stated: "Whether a sale of land shall be confirmed or the property again offered for sale, upon the filing of an upset bid, depends upon circumstances of the particular case, and the action of the trial court thereon will not be disturbed on appeal unless plainly wrong." *See also Tudor v. Tudor*, 171 W.Va. 135, 136 n. 2, 298 S.E.2d 108, 109 n. 2 (1982).

In *Hatfield*, this Court admonished trial courts to be cautious in the consideration of upset bids.

> The trial court should, of course, exercise extreme caution in considering *upset bids received from persons who were present and participated in the bidding at the previous sale*, with a view toward preventing any abuse of the practice of receiving upset bids, or in any way delaying the progress of the litigation.

136 W.Va. at 347, 67 S.E.2d at 532 (emphasis supplied).

Similarly, the Supreme Court of Appeals of Virginia has discussed the inequitable results of accepting upset bids in certain circumstances.

In speaking of upset bids, Mr. Lile, in his work on Equity Pleading and Practice, page 126, has this to say:

> 'Where land has been cried out at a judicial sale, the legal situation, as already pointed out, is peculiar—the purchaser being bound by his bid, but the court, under whose decree the sale is had, is not bound to accept the bid, but, on the contrary, may refuse to confirm the sale, and may order a re-sale, if, in its opinion, the property did not bring its fair value.

> 'The policy of the court, however, is to encourage prospective bidders to attend its sales and thus insure a good price for the property that it administers. This policy is best subserved when bidders are encouraged to feel that if the property is knocked out to them the court will confirm the sale. The practice of allowing other parties to come in after the sale is over, with offers of a larger sum for the same property (known as "opening the biddings"), is not only unfair to the successful bidder, but tends to discourage bidding at such sales. Hence courts are averse to receiving upset bids, where the new bidder attended, or had an opportunity to attend, the public sale.'

*Keyser v. Federal Land Bank*, 169 Va. 368, 372–73, 193 S.E. 489, 490 (1937). In *Keyser*, the upset bidder was not present at the judicial sale but had no valid excuse for not being present. On appeal it was held that the upset bid should not have been accepted.

■ In this case, D. Ewell Hendricks *was present* at the July 3, 1986 proceeding in which the circuit court allowed offers to purchase to be received. Even after Dowse tendered what eventually became the highest offer at that proceeding, the circuit court gave Hendricks another opportunity to increase his offer. Hendricks did increase his offer of $176,400 to only $200,-000, substantially short of the offer sub-

mitted by Dowse. Moreover, the circuit court's July 3, 1986 order allowed two weeks (until July 17, 1986) for the sale transaction to be consummated. No offer was tendered during this period. Not until December 31, 1986, was any offer tendered.

■ Similar to the principle enunciated in *Hatfield* and in the other authorities on upset bids in judicial sales, this Court believes a circuit court, in its sound discretion, may refuse to consider a subsequent offer to purchase an incompetent's land received from a person who was present at a hearing at which the court fixed the terms of the sale to another person, including the date for consummation of the sale, when the subsequent offer to purchase was submitted after the date set for consummation of the sale.

We agree with the trial court that it would be inequitable to expose Dowse, who tendered the highest offer to purchase, to the possibility of another person acquiring the property at some *unforeseen* date in the future, especially when that person was present when Dowse tendered his offer.

The circuit court did not abuse its discretion by rejecting Hendricks' December 31, 1986 offer. The circuit court's judgment in this regard is affirmed.

### III

The appellants in No. 17980, Gilbert L. Hendricks and Sarah Ann Anderson, contend that they are entitled to five percent of $106,100 as attorney's fees because their efforts increased the ultimate sales value of the land.[2] The circuit court denied their request for attorney's fees at the July 3, 1986 hearing, and upon reconsideration, denied the same on December 31, 1986. The circuit court held that such a motion was not timely made.

■ The appellants, Gilbert L. Hendricks and Sarah Ann Anderson, contend that it would have been premature to have requested an award of attorney's fees at the

April 15, 1986 hearing because at that time it was not clear as to who would eventually purchase the land or even if there would have been a higher offer to purchase. We agree with this contention.

Chapter 37, article 1 of the *W. Va. Code* deals with real property of incompetents. *W. Va. Code*, 37–1–15 [1959] provides:

> The provisions of section seven of this article shall govern as to the application of the proceeds of sale. The cost of the proceedings may be paid out of such proceeds, but no attorney's fee shall be taxed therein, except where, in the discretion of the court, it be *reasonable and just.*

(emphasis supplied)

The circuit court, in its July 3, 1986 order, denied attorney's fees "for the reason that such request was not timely made," perhaps suggesting that such an award may otherwise be "reasonable and just."

■ "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. pt. 2, *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986). *See Daily Gazette Co. v. Canady*, 175 W.Va. 249, 332 S.E.2d 262, 263 (1985); 1 S. Speiser, *Attorneys' Fees* §§ 12:3–12:4 (1973). This rule, known as the "American rule," has been subject to exceptions. *See, e.g., syl. pt. 3, Sally–Mike Properties, supra; Daily Gazette Co., supra.*

■ *W. Va. Code*, 27–11–4 [1974] creates a fiduciary relationship between a committee, appointed to manage the estate of an incompetent, and the incompetent, for whom the committee is appointed:

> The committee appointed for any such person unable to manage his business affairs shall take possession of his estate, and may sue or be sued in respect thereto, and for the recovery of debts due to and from such person. The committee shall preserve such estate and

---

**2.** $106,100 is the difference between the actual sale price, $282,500, and D. Ewell Hendricks'
initial offer, $176,400.

manage it to the best advantage, shall apply the personal estate, or so much thereof as may be necessary to the payment of the debts of such person, and the rents and profits of the residue of his estate, real and personal, and the residue of the personal estate, or so much as may be necessary, to the maintenance of such person, and of his family, if any, and shall make due accounting as required by law, and surrender the estate, or as much as he may be accountable for, to such person in case he shall be deemed competent, or, in case of his death, without having been restored to competence, the real estate to his heirs or devisees, and the personal estate to his executors or administrators.

■ It is within the power of a court to deny or reduce the compensation of a fiduciary. For example, a trustee may not be entitled to full compensation for duties performed if the trustee is guilty of a breach of trust. *La Salle National Bank v. Macdonald,* 27 Ill.2d 171, 188 N.E.2d 664 (1963); *Ward v. Shire,* 23 Ky.L.Rptr. 1279, 65 S.W. 8 (1901); *Stone v. Stone,* 230 Md. 248, 186 A.2d 590 (1962); *Lipic v. Wheeler,* 362 Mo. 499, 242 S.W.2d 43 (1951); *Katz v. Katz,* 104 N.H. 478, 190 A.2d 425 (1963); *Dufford v. Smith,* 46 N.J.Eq. 216, 18 A. 1052 (Prerog.Ct.1890); *In re James' Trust,* 23 A.D.2d 529, 256 N.Y.S.2d 765 (1965); *In re Welling's Estate,* 51 A.D. 355, 64 N.Y.S. 1025 (1900); *In re Patton's Estate,* 170 Or. 186, 132 P.2d 402 (1942); *Weinstein v. Union Trust Co.,* 313 Pa. 280, 169 A. 101 (1933); *Reich's Estate,* 230 Pa. 55, 79 A. 151 (1911); *Kilgore v. Hoffman,* 5 Sadler's Cases 306, 8 A. 441 (Pa.1887); *In re Norris' Estate,* 153 S.C. 203, 150 S.E. 693 (1929); G. Bogert, *The Law of Trusts and Trustees* § 980 (Rev.2d ed. 1983); 1 *Restatement (Second) of Trusts* § 243 (1959).

*W.Va.Code,* 44–4–11 [1982], for example, provides:

> If any personal representative, guardian, curator or committee shall, by his negligence or improper conduct, lose any debt or other money, he shall be charged with the principal of what is so lost and interest thereon in like manner as if he had received such principal. And if any personal representative, guardian, curator or committee shall pay any debt, the recovery of which could be prevented by reason of illegality of consideration, or lapse of time, or otherwise, when he knows, or by the exercise of due diligence could ascertain, the facts by which the same could be so prevented, no credit shall be · allowed him therefor.

*See also W.Va.Code,* 44–4–9 [1982]; *In re Boggs' Estate,* 135 W.Va. 288, 311, 63 S.E.2d 497, 511 (1951).

■ Based upon these authorities, we believe that if a committee for an incompetent person neglects its fiduciary duties, such as by failing to obtain an offer to purchase the incompetent person's property at its fair market value when the sale thereof is necessary, then, in equity, the committee may not be entitled to full compensation.

■ In this case, the Bank, as the committee for Evelyn E.M. Hendricks, was willing to sell the 158–acre farm for a price substantially lower than that for which it was ultimately sold. The price for which it was ultimately sold was obtained through the efforts of the appellants, Gilbert L. Hendricks and Sarah Ann Anderson. Therefore, the Bank, as committee for Evelyn E.M. Hendricks, is not entitled to full compensation based upon the farm's selling price, but only upon the $176,400 offer which it obtained, and the appellants are entitled to attorney's fees, to be charged against the Bank's compensation.[3]

■ Accordingly, we hold that when the sales price of an incompetent's real estate is increased, beyond that obtained by the committee, to its fair market value, through the efforts of an interested person, then that interested person is entitled to attorney's fees, pursuant to *W.Va.Code,* 37–1–15 [1959], based upon ·the efforts to increase the sales price, in an amount

---

**3.** It would be inequitable to charge the attorney's fees against the estate when, as here, those fees were incurred to increase the sales price of the estate which had been undervalued due to the lack of diligence on the part of the committee.

**544**

which is reasonable and just. In that situation, attorney's fees awardable pursuant to *W. Va. Code*, 37–1–15 [1959] shall be charged against the compensation of the committee and not against the estate itself.[4]

The circuit court upon remand shall determine what is "reasonable and just" for an award of attorney's fees based upon the appellants' efforts · to increase the sales price of the estate.[5]

The circuit court erred by holding that the appellants' request for attorney's fees was not timely made. The appellants' request was made at the earliest time at which entitlement to attorney's fees could be ascertained. On remand, the circuit court should conduct an evidentiary hearing to determine what amount of attorney's fees is reasonable and just, consistent with our holding that the appellant's request was not untimely.

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is affirmed in part and reversed in part, and case no. 17980 is remanded · for further proceedings consistent with this opinion.

Affirmed in part; Reversed in part and Remanded.

McGRAW, J., participated and concurred in this decision but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.

---

4. *W. Va. Code*, 37–1–15 [1959] normally contemplates attorney's fees to which a *committee* would be entitled. In this unusual case, however, the sales price of the incompetent's estate was increased to its fair market value due to the efforts of interested persons and not of the committee. Accordingly, attorney's fees award-able pursuant to *W. Va. Code*, 37–1–15 [1959] are extended to such interested persons.

5. Normally, reasonable attorney's fees, where allowed to be recovered, are based upon the time expended by the attorneys, if reasonable, at a reasonable hourly rate.